516 A.2d 656

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert Perry DeHART, Appellant.**

Supreme Court of Pennsylvania.

Argued May 17, 1985.

Decided Oct. 3, 1986.

236

238

R. Thomas Forr, Jr., Hollidaysburg, for appellant.

Stewart L. Kurtz, Dist. Atty., Huntingdon, LeRoy S. Zimmerman, Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an automatic direct appeal[1] from a death sentence imposed upon appellant by the Court of Common Pleas of Huntingdon County following his conviction of first degree murder. Appellant also appeals his related convictions for

1. *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1).

robbery, burglary and escape. For the reasons that follow, we affirm those convictions and the judgments of sentence thereon.

## I.

On April 3, 1983, appellant was arrested in Pottstown, Pennsylvania on a charge that he had escaped from prison. On April 14, 1983, after a preliminary hearing before a district justice, appellant was held over for trial on that charge. Appellant was subsequently arraigned on May 13, 1983. On June 2, 1983, a criminal complaint was filed charging appellant with criminal homicide, robbery, burglary and theft by unlawful taking. A district justice conducted a preliminary hearing on those charges on June 15, 1983, and appellant was arraigned on July 22, 1983.

Appellant filed numerous pretrial motions requesting, *inter alia,* a change of venue, a psychiatric examination, investigative funds, suppression of identifications and other evidence, a writ of habeas corpus, severance, sequestration of witnesses and jurors, and the selection of two juries. The Commonwealth's pretrial motions included a motion for consolidation of the escape charge with the homicide and related charges. The Court of Common Pleas of Huntingdon County granted a change of venue on September 21, 1983 and this Court directed that a jury be impanelled in Franklin County. As to appellant's other motions, the trial court granted appellant's requests for psychiatric examination, investigative funds, suppression of certain physical evidence and sequestration of witnesses but denied all other relief. The court granted the Commonwealth's motion for consolidation.

Appellant's trial was conducted from November 14 to 17, 1983. After the conclusion of the Commonwealth's case the defense rested without presenting any evidence. The jury found appellant guilty of first degree murder, robbery, burglary and escape. Defense counsel at that point requested a continuance and additional funds to procure the testimony of expert witnesses. Those requests were denied

242

and a sentencing hearing was conducted at which the defense presented the testimony of appellant's grandmother and a local minister. The Commonwealth chose to rely on the evidence presented at trial. After deliberation as to the sentence to be imposed on the murder conviction, the jury returned a verdict of death, finding that the homicide was committed in the perpetration of a felony, and that the aggravating circumstance outweighed the mitigating circumstances proven by appellant. The Court of Common Pleas subsequently denied appellant's post-verdict motions and sentenced him to death, four to ten years' imprisonment on the robbery and burglary convictions, to be served concurrently but consecutive to the death sentence, and three to seven years' imprisonment on the escape charge, to be served consecutive to the other sentences. This direct appeal followed.

## II.

In each case in which the death sentence is imposed, this Court will conduct an independent review of the sufficiency of the evidence.[2] *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1372 (1983). In accordance with well established law, the evidence presented and all reasonable inferences therefrom must be viewed in the light most favorable to the Commonwealth as verdict-winner. *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714, *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984); *Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Tomoney,* 488 Pa. 324, 412 A.2d 531 (1980); *Commonwealth v. Crowson,* 488 Pa. 537, 412 A.2d 1363 (1979). So considered, the testimony adduced established the following facts.

On March 24, 1983, appellant, a prisoner at the State Correctional Institution at Huntingdon ("SCIH"), working

2. Appellant does raise a sufficiency claim. However, his arguments go to the weight of the evidence. The discussion in the text makes clear that *the verdicts were proper.*

as a milker in that prison's dairy detail, escaped from his worksite outside the prison grounds. Prior to the escape another inmate, Earl Bortz, at the request of Donnie Summers, a third inmate and a friend of appellant's, had telephoned Rodney Greenawalt of Pottstown, Pennsylvania, indicating that Greenawalt would be visited by "a friend from California." Some time on March 25, 1983, appellant arrived in Lincoln Township, Huntingdon County, some fifteen miles south of SCIH. The details of the homicide which followed were provided by David Parks, another SCIH inmate, who had discussed the matter with appellant while occupying an adjoining cell. Appellant broke into and ransacked the cabin of the victim, Terry Hatch, while Hatch was out, and found a 16-gauge, single action shotgun on the premises, which he test-fired into a pillow, retrieving the shell casing. When Hatch returned, he was "ambushed" by appellant, who shot him in the back and again, after Hatch fell to the floor, in the neck/shoulder area. Appellant was able to find only one of the two shell casings produced by the shots.

On March 26, 1983, appellant, who had taken the victim's 1980 green and white Dodge Diplomat, shotgun and Master-Card, visited a mall in the Lancaster area, where, according to the testimony of two salesclerks who had waited on appellant and subsequently picked appellant's picture from a photo array and identified him at trial, he used the victim's credit card to purchase a pair of blue jeans and some athletic socks. That evening appellant approached Laurie Gamber, a woman who had dated Donnie Summers, in a bar in Columbia, Lancaster County. Appellant told Gamber, who subsequently identified him at trial, he had escaped from SCIH and asked her to write to Summers. Appellant arrived at Rodney Greenawalt's home in Pottstown the following day and remained there for about a week. During that time Greenawalt arranged, at appellant's request, for the sale of the victim's car and shotgun. At trial both Greenawalt and his wife, Sherry Ann, con-

firmed that they had received phone calls from Earl Bortz and identified appellant as their visitor.

On the same day, March 27, 1983, the victim's body was discovered by a neighbor. The State Police were summoned and an autopsy and investigation followed. The police observed a trail of blood leading from the front porch of the victim's cabin, around to the back steps, up the steps and into the bedroom where the body was found. The police retrieved the spent shell appellant had been unable to locate and the pillow into which appellant had initially fired the victim's shotgun. It was determined after an autopsy that the victim died as a result of a massive hemorrhage caused by two large gunshot wounds.

Edward Otter, who had purchased the car from Greenawalt, drove to Huntingdon County to visit his girlfriend on April 1, 1983. While there he read in the Huntingdon *Daily News* that the State Police were searching for a car, which matched the description of the one he had purchased, in connection with a murder. On April 3, 1983, after returning to the Pottstown area, Otter contacted the police and turned over the vehicle, providing the police information that led to appellant's arrest on escape charges at a bar in Pottstown that same day. It was later established that the vehicle in question has been registered in the victim's name. Appellant was taken to the State Correctional Institution at Graterford, where the police seized the blue jeans and athletic socks appellant had been wearing. A maroon jacket identified as belonging to the victim, which appellant had left at the bar where he was arrested, was subsequently turned over to the police. The shotgun sold by Greenwalt at appellant's request was also recovered and determined by ballistics experts to be the murder weapon.

Based upon the foregoing recitation, it is clear that the Commonwealth established beyond a reasonable doubt that appellant committed first degree murder, as well as the other crimes charged.[3]

3. Appellant also alleges that the evidence presented at his preliminary hearings was insufficient to establish a prima facie case. Having

 

## III.

Appellant raises numerous claims of error with respect to his convictions and the imposition of the death penalty which we shall address seriatim.

### A. *Consolidation of Charges*

Appellant first argues that the trial court erred in consolidating for trial the escape charge with the homicide and other charges, which prejudiced him by placing before the jury the existence of his prior criminal record. Crucial to our consideration of this claim is Rule 1127 of the Pennsylvania Rules of Criminal Procedure, which provides in pertinent part:

A. Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

■ Given the facts of this case, the requirements of Rule 1127(A)(1)(b) are clearly satisfied. The escape and subsequent crimes were part of the same transaction. Appellant's escape was planned in advance, with arrangements made for him to seek refuge in Pottstown. The homicide, robbery and burglary were perpetrated to provide him the transportation he needed to reach his destination and street clothing to replace his prison garb. *See Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *Commonwealth v. Ferrigan*, 44 Pa. 386 (1863).

Appellant does not attempt to refute the Commonwealth's theory that the homicide was committed in furtherance of the escape, i.e., that the crimes charged were part of the same criminal episode, but contends instead that the re-

reviewed the relevant notes of testimony, we conclude that appellant's claim is without merit.

■

quirements of subsection 1127(A)(1)(a) were not met. In view of the foregoing discussion this argument is irrelevant. Moreover, it ignores the Rule's plain use of the disjunctive "or" between subsections (A)(1)(a) and (A)(1)(b). This initial assignment of error is therefore without merit.

## B. *Voir Dire*

Appellant next challenges several aspects of the jury selection process in his case. First, he alleges that the trial court violated Pa.R.Crim.P. 1106(e) by asking the prospective jurors questions as a group before proceeding to an individual voir dire.[4] This claim is meritless. Pa.R.Crim.P. 1106(e) provides:

> In capital cases, the individual voir dire method must be used, unless the defendant waives that alternative.

■ It is clear from the record that an extensive and careful individual voir dire was, in fact, conducted. The group questioning complained of was limited to preliminary matters such as inability to serve, knowledge of the case or witnesses, acquaintance with law enforcement officers and prior experiences as the victim or a relative of the victim of a crime. Nevertheless, appellant attempts to speculate that, because one prospective juror failed to respond during the group voir dire that he had prejudged the case, other jurors ultimately selected may have been untruthful as to their impartiality.[5] In view of defense counsel's opportunity for the thorough examination of all venirepersons during individual voir dire, which did not exclude further inquiry into areas touched upon in the group questioning, we find this complaint to be without substance.

Appellant also argues that the trial court abused its discretion in permitting jurors to relate their past experiences and those of their families as victims of crime in the presence of other jurors. Appellant theorizes that this

---

4. Appellant also complains that the trial court improperly failed to read the list of names of witnesses, giving the list to the jury to read instead. This claim is frivolous and does not warrant discussion.

5. That juror admitted his inability to be impartial during individual voir dire and was excluded for cause.

procedure might have prejudiced members of the jury against him. Again, this is mere speculation and the extensive individual voir dire process was sufficient to ferret out bias.

In addition, appellant challenges the trial court's refusal to permit during voir dire the question "Would you tend to give more credit and weight to the testimony of a police officer, merely because he is a police officer, than you would to the testimony of any other witness?" The scope of permissible voir dire must be defined by the factual circumstances of a particular case. *See Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Richardson*, 504 Pa. 358, 473 A.2d 1361 (1984). In the instant case the police testimony did not relate directly to appellant's innocence or guilt with the exception of the escape charge which was not seriously contested.[6] Rather, that testimony concerned the scene of the crime, the circumstances of pretrial identifications and the chain of custody of physical evidence. Moreover, the evidence presented by the police officers was not contradicted at trial. Thus, their credibility was not a significant factor in the jury's deliberations. Under the facts of this case, therefore, the trial court's refusal to permit questioning concerning the weight accorded police testimony was not error.[7]

Appellant also complains of the trial court's refusal to exclude for cause prospective juror Georgeanna L. Huston, whose friend had been the victim of a homicide. As a result, defense counsel was obligated to exercise a peremp-

6. Defense counsel conceded during closing argument that the Commonwealth had proven that charge beyond a reasonable doubt.

7. Appellant also argues that defense counsel should have been permitted to ask the following question: "Are you in such a fair and impartial state of mind that you would be satisfied to have a jury possessing your mental state judge the evidence if you or your child were on trial?" This question would clearly have been improper and was correctly excluded. *E.g. Commonwealth v. Drew*, 500 Pa. 585, 459 A.2d 318 (1983); *Commonwealth v. Werts*, 483 Pa. 222, 395 A.2d 1316 (1978); *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973).

tory challenge. The court questioned Ms. Huston concerning that prior incident as follows:

THE COURT: Do you feel you would be affected in the deliberations as a juror because of the fact that that occurred to a friend of yours?

A. I don't know exactly how I would feel. I would want to be fair, but I feel very strongly toward the person that did this to her because she was such a good person.

THE COURT: Might I assume from what you're saying that this was an incident that caused great emotional impact in your life?

A. Yes.

THE COURT: Well, Mrs. Huston, this of course is a totally different situation, totally different set of circumstances.

A. Right.

THE COURT: And you of course are asked to judge this case solely on the facts and evidence that would be presented in this case in accordance with the law that I as a Judge would give you.

I am asking you, can you do that and will you do that fairly and impartially and in accordance with the law?

A. Yes, I think I would.

R. 694a–695a

 As we stated in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), "[t]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence...." *Id.*, 452 Pa. at 560, 307 A.2d at 259, *quoting Commonwealth v. Gelfi*, 282 Pa. 434, 437, 128 A. 77, 79 (1925). This determination is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion. *Id.* Ms. Huston's answers, while somewhat equivocal, reveal neither a clear predisposition to convict nor an inability to follow the law, and her testimony that she believed she was willing and able to be fair and impartial was believed by the trial

court. Its refusal to exclude that juror for cause was therefore not an abuse of discretion.

Appellant next argues that the Commonwealth's use of peremptory challenges to eliminate prospective jurors who wavered on the question of the death penalty but were not excludable for cause under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), violated his right to a jury drawn from a fair cross-section of the community. Appellant attempts to analogize such use of peremptory challenges to their employment to exclude members of a racial group from a jury. *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137 (1986).

This Court has consistently rejected the argument that the dismissal for cause of all *"Witherspoon* excludables" deprives a defendant of the right to a jury representative of a fair cross-section of the community. *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986); *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986); *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1985).

> For appellant to make out a prima facie violation of the "fair cross-section" requirement of the sixth and fourteenth amendments, he must show:
>
> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process.
>
> *Duren v. Missouri*, 439 U.S. 357, 363, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

■ Implicit in this Court's holdings that the death qualification process does not violate the fair cross-section principle is the conclusion that *"Witherspoon* -excludables" are

not a "distinctive" group. The same conclusion was recently reached by the United States Supreme Court in *Lockhart v. McCree, supra:*

> In sum, *"Witherspoon* -excludables," or, for that matter, any other group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors in a particular case, may be excluded from jury service without contravening any of the basic objections of the fair cross-section requirement,.... It is for this reason that we conclude that *"Witherspoon* -excludables" do not constitute a "distinctive group" for fair cross-section purposes, and hold that "death qualification" does not violate the fair cross-section requirement.
>
> *Id.* 106 S.Ct. at 1766 (citation omitted).

Since *"Witherspoon* -excludables," who share a firm opposition to capital punishment, are not a "distinctive" group, so much less so are venirepersons who merely express uncertainty, for whatever reason, as to their ability to impose the death sentence. Appellant's fair cross-section argument must therefore be rejected.

■ Appellant also maintains that the use of peremptory challenges to exclude wavering jurors, coupled with the elimination of *"Witherspoon* -excludables," results in the impanelling of a prosecution-prone jury. Both the United States Supreme Court and this Court have rejected the argument that the death qualification process produces juries which are "slanted" toward conviction.[8] *Lockhart v. McCree, supra; Commonwealth v. Smith, supra; Commonwealth v. Morales, supra; Commonwealth v. Colson,*

---

**8.** Prior to the United States Supreme Court's most recent affirmation of *Witherspoon,* this writer had urged this Court to reexamine these arguments based on the empirical data that has been gathered since the *Witherspoon* decision. *See Commonwealth v. Simon,* 509 Pa. 548, 506 A.2d 392 (1986); *Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985); *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984). It is now clear that federal constitutional law does not take cognizance of the fair cross-section and prosecution-proneness arguments, and it is apparent that the majority of this Court are not inclined to find such a right under the Pennsylvania Constitution.

*supra; Commonwealth v. Maxwell, supra.* While this Court has not addressed at length its basis for rejecting the "prosecution-proneness", theory, we find the rationale expressed by the United States Supreme Court in *Lockhart v. McCree, supra,* persuasive:

> McCree's "impartiality" argument apparently is based on the theory that, because all individual jurors are to some extent predisposed towards one result or another, a constitutionally impartial jury can be constructed only by "balancing" the various predispositions of the individual jurors. Thus, according to McCree, when the State "tips the scales" by excluding prospective jurors with a particular viewpoint, an impermissibly partial jury results. We have consistently rejected this view of jury impartiality, including as recently as last Term when we squarely held that an impartial jury consists of nothing more than "jurors who will conscientiously apply the law and find the facts." *Wainwright v. Witt,* 469 U.S. 412, 423 [105 S.Ct. 844, 852, 83 L.Ed.2d 841] (1985) (emphasis added); see also *Smith v. Phillips,* 455 U.S. 209, 217 [102 S.Ct. 940, 946, 71 L.Ed.2d 78] (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it"); *Irvin v. Dowd, supra,* [366 U.S. 717] at 722 [81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) ] ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

*Id.* 106 S.Ct. at 1767.

Applying this reasoning to "wavering" venirepersons, we can scarcely conclude that their exclusion produces a jury biased against the defendant. Both prosecution and defense have traditionally employed peremptory challenges to remove prospective jurors they believe will be unfavorable to their position. We reject the notion that the exclusion of jurors expressing uncertainty as to their ability to impose

the death penalty results in the impanelling of a jury biased in favor of the prosecution.[9]

■ Appellant's final arguments concerning voir dire are that the jury should have been sequestered as soon as it was impanelled and should not have been permitted to call home in between the guilt and sentencing phases of trial. These contentions are utterly without merit. The jury was selected in Franklin County precisely to avoid the problem of pretrial publicity in Huntingdon County. The jury was sequestered upon arrival in the latter county. The only extraneous influence to which the jurors were allegedly subjected was an issue of *Newsweek* magazine containing an article which discussed capital punishment. There is no evidence that any of the jurors read that article, and, even if they had, its prejudicial nature would be highly questionable. As to the jurors being permitted to call home, those calls were closely monitored and logged by court personnel to guard against possible taint. Moreover, appellant has demonstrated no actual prejudice and is therefore not entitled to relief. *Commonwealth v. Tolassi*, 489 Pa. 41, 413 A.2d 1003 (1980).

## C. *Investigative Funds*

■ Appellant argues that the trial court's denial of additional funds for the enlistment of experts to testify at the sentencing hearing violated his right to due process, equal protection and effective assistance of counsel. The record reveals that defense counsel sought to present expert testimony concerning the moral and social effects of capital punishment during the sentencing hearing. In rejecting that request, the trial court expressed the view that such evidence would not be admissable. We agree. This evidence was directed more to the morality of the death penalty in general than to the question as to its appropriateness in this case. To allow the jury to make its own

9. Appellant's related argument that both a non-death-qualified jury for the trial phase and a death-qualified-jury for the sentencing phase should have been selected therefore falls.

judgment that the death sentence is never to be permitted would represent jury nullification.

## D. *Trial Error*

■■■ Appellant first argues that photographic identifications made by three Commonwealth witnesses should have been suppressed because counsel was not present at the time the police showed the photo arrays including his picture to those witnesses. Under *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738, *cert. denied*, 400 U.S. 919, 91 S.Ct. 173, 27 L.Ed.2d 159 (1970), and its progeny, the accused's Sixth Amendment right to counsel is triggered by his arrest. Appellant concedes that he was not arrested on the homicide, robbery and burglary charges until June 2, 1983; the identifications took place on April 6 and 11, 1983. Appellant argues, however, that he was "in essence" under arrest on the homicide charges because the police revealed to one of the witnesses who identified appellant that they had a suspect, and that he was therefore entitled to have counsel present during the identification procedures. We disagree.

The *Whiting* standard, which is more favorable to the accused than the federal standard, *see United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), recognized that a suspect is entitled to the protection afforded by the presence of counsel once the government has made a commitment to prosecute. This Court determined that in Pennsylvania such a decision was established by the arrest of the accused. To extend the Sixth Amendment right to counsel during photographic identification proceedings to any person merely suspected of a crime would be an unreasonable burden on law enforcement officials and on the taxpayer, who in many instances must ultimately underwrite the cost of such representation. Moreover, allegedly suggestive identification procedures may be challenged through the vehicle of a motion to suppress the evidence

thereby obtained.[10] Appellant's argument must therefore be rejected.

Appellant next challenges as hearsay a statement made by inmate Earl Bortz. The statement in context was as follows:

[THE DISTRICT ATTORNEY]: Prior to [appellant's] escape, did you have occasion to call Pottstown?

[MR. BORTZ]: Yes.

Q: Why did you call Pottstown?

A: I called Rodney Greenawalt and told him a guy from California was coming in.

Q: Who told you to do that?

A: Donnie Summers.

It is well-settled that an out-of-court statement offered to explain a course of conduct is not hearsay. *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973); *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971); *Commonwealth v. Ricci*, 332 Pa. 540, 3 A.2d 404 (1939). Here the prosecutor merely elicited *information* that explained why the telephone call was made, not hearsay. Whether or not Bortz acted on Summers' instructions was a credibility question for the jury. In a similar vein, appellant challenges the admissibility of testimony of state trooper Thomas W. Jones, the complainant on the homicide charge, to the effect that information concerning certain details of the homicide had never been released to the public by the police. This evidence supported the veracity of the testimony of David Parks concerning appellant's admissions to him at SCIH. Appellant argues that Trooper Jones could not be certain that such information had not been leaked in some manner, implying that the testimony was not based on first-hand knowledge. This assertion is frivolous since

10. Appellant does not argue that the photo arrays were suggestive. Nevertheless, we have examined the relevant portions of the record and are satisfied that the identification procedures were proper. The record clearly shows, moreover, that each of the three witnesses had an independent basis supporting their identification of appellant at trial.

Trooper Jones had personal knowledge of what information had and had not been made public. Again, whether he was correct was a credibility question for the jury.

Appellant also argues that two photographs of the blood-stained door of the victim's cabin introduced into evidence as Commonwealth exhibits were inflammatory. Balancing the necessity of the evidence to the Commonwealth's case and the potential for prejudice to the accused, *Commonwealth v. Irwin,* 460 Pa. 296, 333 A.2d 735 (1975); *Commonwealth v. Garrison,* 459 Pa. 664, 331 A.2d 186 (1975), we find that the photographs were clearly admissible. The blood on the door supported the Commonwealth's theory that the victim was ambushed as he entered the cabin. This evidence thus supplied crucial evidence of specific intent to kill. Moreover, the photographs did not depict the victim's body and can scarcely be considered gruesome or likely to inflame the passions of the jury.[11] *Cf. Commonwealth v. Green,* 488 Pa. 611, 413 A.2d 651 (1980) (photograph of blood-soaked curtain not excessively gruesome or inflammatory).

Appellant next argues that the prosecutor went beyond the scope of permissible argument and appealed to the passions of the jury in his closing argument at the sentencing phase. The relevant portion of the district attorney's comments is as follows:

> Ladies and gentlemen, in deciding your verdict, I want you to avoid the temptation in deciding this case on emotion and sympathy. But if emotion and sympathy enter into your deliberations, I want you to think of Terry Hatch and his family. I want you to also consider something else in deciding your verdict, and that is the deterrent effect of that verdict, and specifically, I want you consider the effect that that sentence will have, not only on the inmates of the State Correctional Institution at

11. Appellant also challenges, without elaboration, the admission of certain physical evidence, including the murder weapon, spent shells and photo arrays from which he was identified. These claims are utterly without merit.

Huntingdon, but the inmates all over the Commonwealth of Pennsylvania.

I ask you to remember the testimony, and I ask you for a just verdict, and I say to you that the death penalty is appropriate in this case, not only because of the nature and circumstances of this senseless killing, but also because the penalty of death will send a message across the state to all inmates, that if they escape and they kill to aid their escape, they will face the most severe penalty the law allows, and that is the sentence of death. Thank you very much.

RR 1735a–1736a.

■■■ Appellant first objects to the prosecutor's request for sympathy for the victim and his family. However, that comment was a fair response to defense counsel's extraneous statement that the jury "might have some sympathy and feelings for Mrs. DeHart," appellant's grandmother, who travelled from Texas to testify on his behalf, RR. 1722a, as well as counsel's extended argument asking for sympathy for appellant based on his lack of parental guidance and the general decline of moral and social values in the 1960's and '70's. *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173, *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979); *see, e.g., Commonwealth v. Barren*, 501 Pa. 493, 462 A.2d 233 (1983); *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Green, supra*. Moreover, defense counsel himself prefaced his argument by stating that he realized that the jury had "a lot of sympathy and feelings for Terrence Hatch....", thus injecting the question of sympathy into the proceedings. RR 1721a–1722a. This claim is therefore without merit.

■■■ Appellant also complains that the prosecution appealed to the passions of the jury by stressing the deterrent effect of a death verdict. This Court held that such an argument was not improper or prejudicial in *Commonwealth v. Zettlemoyer, supra* 500 Pa. at 55, 454 A.2d at 958. Moreover, appellant was permitted to present during

the sentencing hearing the testimony of a minister to the effect that capital punishment is immoral. Under the circumstances it was appropriate for the Commonwealth to argue that a death verdict would have a legitimate purpose.

## IV.

 Appellant raises several challenges to the constitutionality of Pennsylvania's death penalty statute, 42 Pa.C.S. § 9711. Appellant first complains that the statute provides for a mandatory sentence of death where the jury concludes that aggravating circumstances outweigh mitigating circumstances and thus does not permit an individualized sentencing determination. This argument was recently rejected by this Court in *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), in which we explained:

> Foremost among [appellant's] challenges is his contention that the statute creates a conclusive presumption favoring imposition of the death penalty by precluding the sentencing body from granting mercy or leniency to a defendant. Appellant claims that the consideration of mercy or leniency is precluded by the statute's direction that the court instruct the jury that "the verdict must be a sentence of death of the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." 42 Pa.C.S. § 9711(c)(iv). Although it is true that the Pennsylvania death penalty statute does not allow a jury to avoid imposition of a death sentence through the exercise of an unbridled discretion to grant mercy or leniency, the statute permits the defendant to introduce a broad range of mitigating evidence that can support the finding of one or more mitigating circumstances which may outweigh the aggravating circumstances found by the jury. Appeals for mercy and leniency can be founded upon and made through introduction of evidence along this broad spectrum of mitigating circumstances. The channelling of considerations of mercy and

leniency into the scheme of aggravating and mitigating circumstances is consistent with the mandate of *Furman v. Georgia,* 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972), *reh. denied,* 409 U.S. 902 [93 S.Ct. 89, 34 L.Ed.2d 163] (1972), that the discretion of the sentencing body in capital cases "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189 [96 S.Ct. 2909, 2932, 49 L.Ed.2d 859] (1976), *reh. denied,* 429 U.S. 875 [97 S.Ct. 197, 50 L.Ed.2d 158] (1976).

Contrary to appellant's assertion, the United States Supreme Court decision in *Lockett v. Ohio,* 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978), does not require that the sentencing body be given discretion to grant mercy or leniency based upon unarticulable reasons. *Lockett* holds "that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604 [98 S.Ct. at 2965]. (Emphasis in original; footnotes omitted). The Pennsylvania statute clearly permits consideration of such evidence. Specifically, section 9711(e)(8) permits the introduction of "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8). Thus, we find no merit to appellant's constitutional challenges to the Pennsylvania death penalty statute.

*Id.,* 511 Pa. at 326–328, 513 A.2d at 387–88 (footnote omitted).

■ Appellant argues that the death penalty statute is unconstitutional because it does not require the Commonwealth to prove the absence of mitigating circumstances beyond a reasonable doubt where the aggravating circumstance is that the murder was committed in the perpetration of a felony. Appellant's theory rests on the premise that, since the Commonwealth has proven at the guilt-determina-

tion stage that first degree murder was committed in perpetration of a felony, the Commonwealth has no burden at the penalty phase, requiring the defendant to rebut a presumption in favor of the death sentence. It must be noted first that the premise itself is false because, although the prosecution may ask the jury to find, on the basis of the evidence already adduced at the guilt-determination phase, that the first-degree murder was committed in the perpetration of a felony the commission of which the prosecution has already established, the crucial aspect of the aggravating circumstance, i.e., that the murder was committed in *perpetration of that felony* is not an essential element of the jury's verdict of first degree murder. Moreover, to require the Commonwealth to negate the existence of mitigating circumstances would be contrary to the long-established rule that recognizes the virtually impossible burden placed upon a party required to prove a negative. *See, e.g., Beaver Gasoline Co. v. Osborn Borough,* 445 Pa. 571, 285 A.2d 501 (1971); *Mathis v. Lukens Steel Co.,* 415 Pa. 262, 203 A.2d 482 (1964); *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59 (1961). Thus we find no basis for distinguishing aggravating circumstance number six from any other aggravating circumstance prescribed by legislature with respect to the burden of proof at the sentencing stage.[12]

Appellant next argues that the death penalty statute is defective in that it provides the defense with no funds or administrative assistance to determine if the proportionality review required pursuant to 42 Pa.C.S. § 9711(h)(3)(iii) is adequately performed. Appellant's concern with the manner in which this Court reviews the proportionality of sentences in capital cases is unwarranted. In *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we ordered

---

**12.** Appellant also argues that he should have been permitted to argue last during the sentencing hearing. Such a claim was rejected in *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1985). Pursuant to Pa.R.Crim.P. 1116(b), the Commonwealth is always entitled to argue last.

the performance of an ongoing comprehensive study of all cases in which the defendant was convicted of first degree murder since the effective date of the present death penalty statute. For each such case, information has been compiled concerning the age, race and sex of the defendant and the victim, whether the death penalty was sought, the aggravating and mitigating circumstances presented and the evidence relating thereto, the sentence imposed, related charges and the disposition thereof, and data concerning any co-defendants. This study, entitled "Pennsylvania Death Penalty Study," is maintained by the Administrative Office of Pennsylvania Courts and is made available by that office free of charge. Thus there is no barrier to access to the information upon which this Court bases its decision as to proportionality. Absent some definitive criticism of the adequacy and/or the accuracy of the information supplied by this source, the instant argument is without merit.

■ Appellant also challenges aggravating circumstance six as unconstitutionally vague and overbroad on two grounds: first, that it fails to specify which felonies are included, and second, that is confusingly similar to the definition of second degree murder. The first argument appears to be based on the assumption that the legislature intended to limit the applicability of aggravating circumstance six to the felonies enumerated in the section of the Crimes Code defining second degree murder. *See* 18 Pa. C.S. § 2502(b), (d). In the instant case the jury was instructed that it could consider only the robbery and burglary convictions. Both felonies fall within the definition of second degree murder. Thus even if appellant is correct he is not entitled to relief. "It is a fundamental principle of constitutional law that a challenge to a statute may not be raised in the abstract but must find its basis in an injury to the party seeking to have the enactment declared constitutionally infirm." *Commonwealth v. Bell*, 512 Pa. 334, 342, 516 A.2d 1172, 1177 (1986) (citing cases). Therefore we need not consider this contention further.

 In his second argument, concerning the "similarity" between aggravating circumstance six and the definition of second degree murder, 18 Pa.C.S. § 2502(b), (d), appellant attempts to equate the culpability established where a first degree murder is committed in perpetration of a felony with that of second degree, i.e., felony murder. This argument ignores the qualitative distinction between first and second degree murder. The essential element which distinguishes first degree from lesser grades of murder is specific intent to kill. *Commonwealth v. Moore*, 473 Pa. 169, 373 A.2d 1101 (1977) (citing cases). In contrast, the intent necessary to establish second degree murder is constructively inferred from the malice incident to the perpetration of an underlying felony. *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981). Moreover, the fact that a first degree murder was committed in perpetration of a felony has been determined by the legislature to be an aggravating factor to be considered in the sentencing process. Thus a first degree murder committed in perpetration of a felony is not only a murder of a higher degree, it is made further culpable by the commission of the accompanying felony.

Appellant also argues, notwithstanding this Court's decision to the contrary in *Commonwealth v. Zettlemoyer, supra*, that Pennsylvania's death penalty statute inflicts cruel and unusual punishment. Appellant specifically relies on the discretionary nature of the Commonwealth's decision whether or not to seek the death penalty. A similar argument was rejected by a majority of the United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 199, 225, 96 S.Ct. 2909, 2937, 2949, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell and Stevens, JJ.; opinion of White, J., joined by Burger, C.J., and Rehnquist, J.). As noted by Mr. Justice White:

> Absent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it

convicts. Unless prosecutors are incompetent in their judgments, the standards by which they decide whether to charge a capital felony will be the same as those by which the jury will decide the questions of guilt and sentence. Thus defendants will escape the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the proof is unsufficiently strong. This does not cause the system to be standardless any more than the jury's decision to impose life imprisonment on a defendant whose crime is deemed insufficiently serious or its decision to acquit someone who is probably guilty but whose guilt is not established beyond a reasonable doubt. Thus the prosecutor's charging decisions are unlikely to have removed from the sample of cases considered by the Georgia Supreme Court any which are truly "similar." If the cases really were "similar" in relevant respects, it is unlikely that prosecutors would fail to prosecute them as capital cases; . . . .

Id. at 225, 96 S.Ct. at 2949.

 We agree with this reasoning and therefore reject appellant's Eighth Amendment claim. "The charging decision is the heart of the prosecution function." ABA Standards for Criminal Justice, § 3–3.9 at 3–55 (2d ed. 1980). Absent some showing that prosecutorial discretion is being abused in the selection of cases in which the death penalty will be sought, there is no basis for appellant's assertions.[13]

Appellant's final challenge to the constitutionality of the death penalty statute is that the legislature has usurped this Court's power to prescribe judicial practice and procedure, thus violating the separation of powers. Article 5, section 10(c) of the Pennsylvania Constitution provides:

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all

---

**13.** Appellant also reiterates his "death qualification argument in an Eighth Amendment context. For reasons already stated we reject that argument.

officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

Pa. Const. Art. 5, § 10(c).

 Although he does not elaborate on his claim, appellant's argument would appear to be that the statute's sentencing procedures should be governed by our Rules of Criminal Procedure. We disagree. "It is the province of the legislature to determine the punishment imposable for criminal conduct." *Commonwealth v. Wright,* 508 Pa. 25, 40, 494 A.2d 354, 361 (1985), *aff'd sub nom. McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (citing cases). The legislature has enacted a statutory scheme so that a determination can be made as to whether the death penalty should be imposed in a given case. The statute embodies the legislature's judgment as to what specific factors relating to the nature of the crime and the character and record of the accused should be considered in making that determination. The discretion of the sentencing body is thereby limited and channeled in a manner which we have held is adequate to prevent the arbitrary and capricious imposition of the death sentence. *Commonwealth v. Zettlemoyer, supra.* The statute is clearly an appropriate exercise of the legislative function and in no way impairs this Court's authority to promulgate procedural rules.

■ Finally, pursuant to subsection (h)(3)(iii) of our death penalty statute, 42 Pa.C.S. § 9711(h)(3)(iii), we must determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant." We have therefore conducted an independent evaluation of all cases of murder of the first degree convictions which were prosecuted or could have been prosecuted under the death penalty statute. *See Commonwealth v. Frey, supra; Commonwealth v. Zettlemoyer, supra.* Our examination of the cases in which the aggravating circumstance was that the murder was committed in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and the defense adduced evidence of mitigating circumstances similar to that presented in the instant case, reveals that the death penalty is not excessive or disproportionate in the case before us.

Accordingly, for all of the foregoing reasons, the judgments of sentence are affirmed.[14]

FLAHERTY, J., did not participate in the consideration or decision in this case.

---

14. The Prothonotary of the Middle District is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor. 42 Pa.C.S. § 9711(i).