J-E02007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID WIGGINS, | : | No. 1668 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence May 1, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0007117-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 19, 2019**

Appellant, David Wiggins, appeals from the Judgment of Sentence

entered by the Delaware County Court of Common Pleas following his

convictions by a jury of Second-Degree Murder, Robbery, Criminal Conspiracy

(Robbery), and Carrying a Firearm Without a License.[1]  On appeal, Appellant

challenges the trial court's denial of his motion to strike a prospective juror

for cause.  After careful review, we affirm.

A detailed recitation of the underlying facts is not necessary to an

understanding of our analysis of the issues that Appellant raises on appeal, so

we will provide a summary.  On September 19, 2013, Appellant and Rita Pultro

---

[1] 18 Pa.C.S. § 2502(b); 18 Pa.C.S. § 3701; 18 Pa.C.S. § 903; and 18 Pa.C.S.
§ 6106, respectively.

killed Jason McClay ("Victim") during a gunpoint robbery of a Rite Aid in Chester, Pennsylvania. Appellant and Pultro conspired with Ashaniere White, Christopher Parks, and Tariq Mahmud, a loss prevention agent at the Rite Aid. Thereafter, the Commonwealth charged Appellant with, *inter alia*, Second-Degree Murder, Robbery, Criminal Conspiracy (Robbery), and Carrying a Firearm Without a License.

In January 2015, Appellant, Pultro, and Mahmud proceeded to a joint eleven-day jury trial. During jury selection, the court and the attorneys reviewed juror questionnaire forms, conducted group *voir dire*, and then followed up with individual *voir dire*. N.T. Trial, 1/28/15 (Vol. I), at 22-26, 28 (explaining the process).

During group *voir dire*, Prospective Juror 56 assured the court (by remaining seated in response to questions) that he could accept and follow the court's "binding instruction[s]" that: (1) "The Defendant is presumed to be innocent of the charges and it is the Commonwealth's burden to prove the Defendant guilty of the charges beyond a reasonable doubt[;]" (2) "The mere fact that the Defendants have been arrested and charged by the Commonwealth is not evidence of the Defendants' guilt and cannot be considered by the jury as evidence of the Defendants' guilt[;]" and (3) "The Commonwealth has the only burden of proof in this case and the Defendants need not testify nor present any evidence and you may not infer anything bad

or negative about the Defendants if they choose not to testify or present any evidence[.]" *Id.* at 36.

Prospective Juror 56 also did not stand or respond when the court asked the group: (1) "I have indicated the nature of the charges to you. Is there anything about the nature of the charges themselves that would prevent you from being a fair and impartial juror in this case?" and (2) "Is there anyone among you for any reason that I may not have touched upon who could not serve as a fair and impartial juror in this case?" *Id.* at 35, 38.

Prospective Juror 56 responded (by standing) to three of the trial court's questions during group *voir dire*: (1) "Have any of you read, seen, or heard anything about this case in the news media or from some other source?" (2) "Have you or has any member of your family or a close friend ever been the victim of or accused of a crime similar to those with which the Defendants are charged?" and (3) "Is there anyone here who lives or works in the vicinity of 2722 West 9th Street in Chester, Pennsylvania?" *Id.* at 32, 34, 38.

During individual *voir dire*, the court followed up about these areas and Prospective Juror 56's individual questioning proceeded as follows:

> THE COURT: Sir, you gave a "yes" response to three of my questions, one was having known something or heard about the case, a victim of a similar crime, and either living or working in the vicinity?
>
> JURY PANELIST #56: Yes.
>
> THE COURT: So could you elaborate on all those, why you gave a "yes" response to those?

JURY PANELIST #56: The first one was?

THE COURT: The first one was hearing about the case or reading about the case.

JURY PANELIST #56: Oh, I read the newspaper constantly. I am a subscriber to the *Wilmington Journal* and I read the Sunday *Daily Times* every day -- every Sunday.

THE COURT: So when's the last time you heard about this case or read about it?

JURY PANELIST #56: Last time, when it was active, a couple -- what's it, two years?

THE COURT: Pardon?

JURY PANELIST #56: When it was active, when they were --

THE COURT: Which would have been, what --

JURY PANELIST #56: Two years --

THE COURT: Okay.

JURY PANELIST #56: -- I've heard this.

THE COURT: So the last time you read anything about the case or heard anything about the case?

JURY PANELIST #56: Yes. Um-hum.

THE COURT: Okay. Someone you knew --

JURY PANELIST #56: My wife --

THE COURT: -- victim of a similar crime?

JURY PANELIST #56: Yes, my wife was robbed while she was working in a supermarket, and we work midnights. I work at another store but that -- but a fellow came up with his couple groceries. As soon as the register[] opened, he picked up his shirt, showed her a pistol, said empty the register, and so that was -- I thought that was pretty similar.

- 4 -

THE COURT: Okay. All right. And you live or work in the vicinity of --

JURY PANELIST #56: I'm about three miles directly down Market Street.

*     *     *

THE COURT: And have you ever been in that particular Rite Aid?

JURY PANELIST #56: In it? No, sir.

THE COURT: Okay. Anyone else have any questions for juror #56?

MS. RAINEY [Appellant's counsel]: Sir, does the fact that your wife was robbed similar as you say in a grocery store, does that impact your ability to be fair in this particular case? Are you going to be thinking about that?

JURY PANELIST #56: Probably not. It happened 25 years ago.

MS. RAINEY: Okay.

JURY PANELIST #56: Probably not.

MS. RAINEY: But you're not sure; that's why you're saying "probably"?

JURY PANELIST #56: Can I tell you what's in the back of my mind? I was going to say (inaudible) --

MS. RAINEY: Okay.

JURY PANELIST #56: -- leaning towards like 51 percent not but --

MS. RAINEY: Thank you for being honest.

THE COURT: All right. Any other -- anyone else?

*     *     *

MR. WISMER [co-defendant Pultro's counsel]: What do you remember reading about the case?

JURY PANELIST #56: Just the fellow got killed, he was the store manager. I forget what -- he was helping somebody or something and he -- oh, he was -- he covered for a day off for somebody so he shouldn't even have been there that day and it struck me as no good deeds go unpunished. I say that all the time.

MR. WISMER: Is that all you remember reading?

JURY PANELIST #56: Pretty -- for the most part. That's the highlights, yeah. I mean I don't remember exactly how many people were involved, you know, or how -- too much of the details.

MR. WISMER: And it was tragic, certainly, but does that -- is that going to affect your ability to be a fair and impartial juror knowing what you know about what happened to this man?

JURY PANELIST #56: Probably not. Again, I'm going to say probably 51 percent on it.

THE COURT: Let me phrase the question a little differently.

JURY PANELIST #56: Please.

THE COURT: Is there a doubt in your mind about your ability to be fair and impartial?

JURY PANELIST #56: No. I can do it. I can do it.

THE COURT: All right. Anyone else?

MR. TINARI [co-defendant Mahmud's counsel]: May I just follow that up briefly?

THE COURT: Yes.

MR. TINARI: It seems as though you're hesitating. There's no right or wrong answer even to the Judge's question. We're just trying to find out --

JURY PANELIST #56: I --

MR. TINARI: -- what's in your heart and your mind, and when -- as lawyers especially for Defendants who are accused of crimes, we hear probably or 51 percent, that makes us nervous. So we're just asking you --

JURY PANELIST #56: Absolutely.

MR. TINARI: -- just as the Court did, it seems as though there's a little bit of hesitation, and if there is, just tell us. It's okay. No one's going to --

JURY PANELIST #56: And I realize --

MR. TINARI: -- thinking negatively of you --

JURY PANELIST #56: -- you've got 120 -- 18 other people --

MR. TINARI: -- you know what I mean? We're --

JURY PANELIST #56: -- that you can use.

MR. TINARI: -- just trying to proceed in accordance with what we're required to ask.

JURY PANELIST #56: Yes.

MR. TINARI: And if your answer is you have some doubt, just tell us.

JURY PANELIST #56: I'd have to be saying I was kidding you if there was absolutely nothing because I experienced it.

MR. TINARI: Understood.

JURY PANELIST #56: But I still think I could probably be fair. I mean I understand --

MR. TINARI: You still think you can be? See, that's what's making us --

JURY PANELIST #56: I'm --

MR. TINARI: You know what I'm saying? If you were in our shoes --

JURY PANELIST #56: I can --

MR. TINARI: -- you wouldn't want to hear someone say --

JURY PANELIST #56: I see.

MR. TINARI: -- well, I think I could be fair, I'm hoping I could be fair.

JURY PANELIST #56: I can appreciate your -- you on that. I think I can -- okay. So --

MR. TINARI: All right. I won't ask any more times.

JURY PANELIST #56: I --

MR. TINARI: That's -- I think --

JURY PANELIST #56: I believe I can.

MR. TINARI: Okay. Thank you, sir.

JURY PANELIST #56: I believe I can and I --

THE COURT: Mr. DiRosato?

MR. DIROSATO [for the Commonwealth]: Sir, the role of a juror is to hear the evidence --

JURY PANELIST #56: Exactly.

MR. DIROSATO: -- to weigh the evidence per the instructions given by the Court.

JURY PANELIST #56: Exactly.

MR. DIROSATO: And --

JURY PANELIST #56: I'm not trying to be rude.

MR. DIROSATO: -- the Court will give you the instructions on the law, take whatever facts as you find true along with your fellow jurors and apply that to the law to determine whether the

Commonwealth has met its burden beyond a reasonable doubt to prove these Defendants guilty of the crimes they're facing -- have been charged with.

JURY PANELIST #56: Exactly.

MR. DIROSATO: And knowing that, can you put aside your past experience and follow the Court's instruction and render a verdict based upon a fair and impartial weighing of the evidence?

JURY PANELIST #56: I think I can. I'm saying -- I said -- okay. I can. Putting it in context, you show me evidence, it is or it isn't.

MR. DIROSATO: If the Commonwealth fails to meet your -- meet its burden, would you hesitate and acquit these Defendants?

JURY PANELIST #56: If you didn't prove they did it, I will.

THE COURT: You understand that it has to be proven beyond a reasonable doubt. It's not a 51 percent. It's beyond a reasonable doubt. Do you understand that?

JURY PANELIST #56: Yes, sir.

THE COURT: And you could follow that standard, correct?

JURY PANELIST #56: Yes, sir. I'm sure I could.

N.T. Trial, 1/28/15 (Vol. II), at 280-88.

Counsel for co-defendant Mahmud moved to strike the prospective juror for cause based on the juror's equivocation and hesitation in his responses. *Id.* at 288-89. Appellant's counsel appeared to join the motion, noting that the juror appeared to give two different answers about whether he could be fair and impartial. *Id.* at 289. The trial court denied the defense's motion to

strike Prospective Juror 56 for cause. *Id.* Ultimately, Prospective Juror 56 was not selected or seated as a member of Appellant's jury.[2]

At trial, the Commonwealth presented testimony from numerous witnesses, including White, Parks, and numerous detectives and police officers.

On February 11, 2015, the jury convicted Appellant of Second-Degree Murder, Robbery, Criminal Conspiracy (Robbery), and Carrying a Firearm Without a License. On May 1, 2015, the trial court imposed the statutorily mandated sentence of life imprisonment.[3]

Appellant filed a timely Notice of Appeal on June 1, 2015.[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On December 8, 2017, a panel of this Court affirmed Appellant's Judgment of Sentence.

On December 13, 2017, Appellant filed an Application for *en banc* reargument, which this Court granted on February 9, 2018.

---

[2] *See* N.T. Trial, 1/29/15, at 248. Due to the list system of exhausting peremptory challenges used in this case, whereby the parties exercised strikes in writing by exchanging a list while supervised by a court officer, it is not clear which defendant actually exercised a peremptory strike for Prospective Juror 56. *See id.* at 205. Notably, this is consistent with Pennsylvania Rule of Criminal Procedure 631(F)(2)(f) ("No one shall disclose which party peremptorily struck any juror.").

[3] 18 Pa.C.S. § 1102(b).

[4] May 31, 2015, was a Sunday. *See* 1 Pa.C.S. § 1908 ("Computation of time").

Appellant presents one issue for our review:

Whether the trial court erred when it denied the defense motion to strike Prospective Juror number 56 for cause since that panelist's wife was the victim of a similar crime and he could not state with certainty that he could be fair and impartial?

Appellant's Brief at 5.

Appellant avers that the trial court erred in denying his motion to strike Prospective Juror 56 because the prospective juror: (1) "read about the case in the newspaper and informed the court that his wife was the victim of a similar crime[;]" (2) "demonstrated equivocation, hesitation, and uncertainty, and supplied inconsistent answers about his ability to be impartial[;]" (3) "could only guess with [51%] confidence that he could be fair, and he noted that other panelists remained available[;]" and (4) agreed to follow the court's instructions "only under the apparent pressure of the prosecutor" and the trial court. Appellant's Brief at 11, 19-21.

Appellant does not allege that the trial court actually seated Prospective Juror 56 as a member of his jury. Rather, Appellant contends that he suffered prejudice because the collective defense exercised a peremptory strike, and subsequently exhausted their nine peremptory strikes, to eliminate Prospective Juror 56. Appellant's Brief at 11, 21-23.

The jury selection process is crucial to the preservation of a criminal defendant's right to an impartial jury explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution. *Commonwealth v. Hunsberger*, 58 A.3d 32, 38 (Pa. 2012). "The decision whether to disqualify a venireman is

within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." *Commonwealth v. Ingber*, 531 A.2d 1101, 1103 (Pa. 1987) (citations omitted).

The purpose of examining prospective jurors is to "ascertain[] whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict." *Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016) (quoting *Ingber*, 531 A.2d at 1103). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." *Id.* (quoting *Commonwealth v. DeHart*, 516 A.2d 656, 663 (Pa. 1986)). In other words, the relevant inquiry "is whether any biases or prejudices can be put aside upon the proper instruction of the court." *Id.* (quoting *Ingber*, 531 A.2d at 1103).

The decision whether to disqualify a prospective juror "is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." *Id.* (quoting *DeHart*, 516 A.2d at 663). Appellate courts defer to the trial court's assessment of a prospective juror's answers during *voir dire* because the trial court is "in the best position to assess the [prospective juror's] credibility and fitness to serve[.]" *Commonwealth v. Cox*, 983 A.2d 666, 683 (Pa. 2009).

Most importantly, we should give great weight to the trial court judge's decision about striking jurors because the trial court judge not only hears the words that the potential juror speaks, but also the manner in which the juror

says those words and is in a better position than an appellate court to evaluate the significance of any hesitancy of a potential juror:

> The juror appears before the trial judge, who sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him.

*Shinal v. Toms*, 162 A.3d 429, 442 (Pa. 2017) (citing *Commonwealth v. Gelfi*, 128 A. 77, 79 (Pa. 1925)).

After carefully reviewing the certified record, the parties' briefs, the relevant case law, and the trial court's Opinion, we are satisfied that the trial court did not palpably abuse its discretion when it refused to strike Prospective Juror 56.

Here, the trial court concluded there was no basis to strike Prospective Juror 56 because, after individually questioning "every potential jury candidate that had not been struck for cause[,] each and every one of them stated satisfactorily that they could follow the court's instructions, and be fair and impartial." Trial Court Opinion, 5/20/16, at 2. The court emphasized that Prospective Juror 56: (1) "stated that he probably could be fair in this case[;]" (2) assured the court that he could be fair and impartial; and (3) confirmed that he understood and could apply the applicable legal standard. *Id.* (citing N.T. Trial, 1/28/15 (Vol. II), at 301-02, 306).

- 13 -

During group *voir dire*, Prospective Juror 56 acknowledged that he could accept and follow the court's binding instructions about several fundamental legal principles, including the presumption of innocence and the Commonwealth's burden to prove Appellant guilty beyond a reasonable doubt. When the trial court asked the prospective jurors whether there was anything about the nature of the charges themselves or whether there was any other reason why any prospective juror could not sit as a fair and impartial juror, Prospective Juror 56 did not stand or respond.

More importantly, the trial court judge, who observed the demeanor of Prospective Juror 56 during questioning and was in the best position to evaluate the significance of the hesitancy of Prospective Juror 56, concluded that Prospective Juror 56 was willing and able to be fair and impartial and to follow the court's instructions.

Accordingly, we give great deference to the trial court's observations of Prospective Juror 56, and find that the trial court did not palpably abuse its discretion by refusing to exclude Prospective Juror 56 for cause.

Because we conclude that the trial court did not palpably abuse its discretion and we find no merit to the issue raised, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

President Judge Gantman, President Judge Emeritus Bender, Judge Panella, Judge Shogan, Judge Lazarus, and Judge McLaughlin join the memorandum.

Judge Nichols concurs in result.

Judge Stabile files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/19/19