688 A.2d 691

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Sherman T. CRAVER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 30, 1996.

Decided Jan. 14, 1997.

18

Hugh J. Bracken, Media, for appellant.

Kevin Kelly, Joseph J. Mittleman, Philadelphia, William R. Toal, III, Media, Robert A. Graci, Harrisburg, for appellee.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

In this appeal from two sentences of death, appellant challenges the Delaware County jury selection process and the limitations on voir dire utilized in his case. Represented by new counsel, he raises his jury-related claims in the context of ineffective assistance of trial counsel. Finding no merit in any of his claims, we affirm the judgment of sentence.

Appellant, Sherman T. Craver, was tried for the murders of his former girlfriend, Marie Bates, and a police officer, Connie Hawkins. The evidence established that on July 1, 1993, appellant was at the home of Marie Bates in the city of

20

Chester, Delaware County, Pennsylvania. The Chester police department received a call reporting a disturbance at the residence, and Officer Hawkins, in uniform, went to the house and knocked on the door. Appellant opened the door, shot the officer, turned and shot Bates while her nine-year-old son watched, then fled to the state of Delaware. He was arrested there three hours later. At the time of his arrest, a gun registered to him was found in his car. Ballistics tests later proved it was the weapon used to kill Marie Bates and Officer Hawkins.

This court is required in capital cases to review the sufficiency of the evidence. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied sub nom. Zettlemoyer v. Pennsylvania,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) rehearing denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bryant,* 524 Pa. 564, 567, 574 A.2d 590, 592 (1990).

The record reveals sufficient evidence upon which the jury could have found appellant guilty of two counts of murder of the first degree. Several witnesses testified that prior to the murders, appellant was angry about criminal charges pending against him for driving under the influence and for his earlier assault on Marie Bates. As a Philadelphia Housing Authority police officer, he was in danger of losing his job as a result of the charges. He was scheduled to appear for a preliminary hearing on these charges on the day after the murders.

Ronald Byrd testified that he lived across the street from Marie Bates and that on the night of the killings he heard shots outside his home. He looked out his doorway and saw appellant standing in front of the Bates home near the body of Officer Hawkins with a weapon in his hand. He then saw appellant walk away from the scene of the killings.

Sheila Morgan, another eyewitness, testified that she saw Officer Hawkins walk to the Bates residence and knock on the door. She then saw the door open and flashes of light accompanied by the sound of gunshots. She heard Officer Hawkins scream and saw her attempting to escape, falling down the steps, and crawling. Then she heard three or four more shots. She immediately approached Officer Hawkins to aid her, and saw someone leave the Bates residence. Though she did not identify appellant, her description of the shooter generally fit the appearance of appellant, and other witnesses placed appellant at or near the scene at the time of the murders.

A third eyewitness, another neighbor, testified that she saw a police officer walk up Marie Bates' front steps, then heard a gunshot. She then saw the officer lying flat on the ground with her arms outstretched. She called 911, then heard three more gunshots followed by the sound of Odell Scott, Marie Bates' nine-year-old son, crying. Finally, she saw appellant leaving the area approximately five minutes after the shootings.

Odell Scott testified that he was inside his house with his mother and saw appellant draw a gun from a holster and shoot the police officer and his mother. A police officer who questioned Odell at the scene of the crime testified that Odell identified appellant as the man who shot the victims.

Another police witness testified that, after the shootings, Officer Hawkins' firearm was in its holster and had not been fired. A gun registered to appellant, together with ammunition, was found in appellant's car when he was arrested three hours after the murders. A forensic firearms expert testified that cartridge casings found at the scene of the murders, as well as the bullets taken from the bodies of both victims, were fired from the gun seized from appellant when he was arrested.

Finally, appellant made several incriminating statements to law enforcement officers following his arrest, including his

spontaneous question of a Delaware state police lieutenant, "How many people did I kill last night?"

This abundant evidence is sufficient to establish beyond a reasonable doubt all the elements of two counts of first degree murder.

Appellant raises three additional issues for our review. He claims that trial counsel were ineffective in failing to challenge: (1) a jury which was not selected in accordance with law; (2) jury venire summoning procedures which systematically produced panels of prospective jurors on which African–Americans were underrepresented; and (3) limitations on voir dire of prospective jurors which prevented full exploration of jurors' attitudes about racial prejudice and stereotyping, domestic violence, and violence against police officers.

Appellant argues that trial counsel were ineffective as to all the claims related to jury selection. According to *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987) and its progeny, the defendant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced him. It is presumed that counsel's assistance was effective, and the burden of proving ineffectiveness falls upon the party alleging it. *Commonwealth v. Miller,* 494 Pa. 229, 233, 431 A.2d 233, 235 (1981). Prejudice, in the context of ineffective assistance of counsel, means that there must be a reasonable possibility that but for counsel's unprofessional errors, the result of the trial would have been different. *Commonwealth v. Johnson,* 516 Pa. 407, 413, 532 A.2d 796, 799 (1987). While an evidentiary hearing is not mandated in every case where ineffectiveness is raised, an evidentiary hearing was held on appellant's claim that counsel were ineffective and all of appellant's claims were deemed meritless.

Appellant's first claim is that the pool of potential jurors in Delaware County was not selected in accordance with law, and that trial counsel's failure to investigate and challenge this defect constitutes ineffective assistance of counsel, requiring a new trial. At the evidentiary hearing on appellant's post-trial

motions, he presented evidence that the Delaware County jury commissioners failed to prepare an annual master list of prospective jurors.[1] Instead, a master list was last prepared in 1989, and was approximately four years old at the time of his trial. The county failed to conduct an annual random selection of names for jury service from such a master list.[2] Instead, the last random selection of jurors from the master list took place in 1989, and was approximately four years old at the time of trial. The failure to update the lists resulted in the exclusion of all residents who reached the age of eighteen and those who changed addresses after the list was prepared in 1989, in direct violation of 42 Pa.C.S. §§ 4501 and 4502.[3]

1. 42 Pa.C.S. § 4521(a) provides:

§ 4521. Selection of prospective jurors

(a) Preparation of master list of prospective jurors.—At least annually the jury selection commission shall prepare a master list of prospective jurors. The list shall contain all voter registration lists for the county, which lists may be incorporated by reference, or names from such other lists which in the opinion of the commission will provide a number of names of prospective jurors which is equal to or greater than the number of names contained in the voter registration list. The commission may, but will not be required to, supplement the master list of prospective jurors to include, without being limited to, persons in any of the following categories:

(1) Persons listed in telephone, city, municipal directories and similar directories.

(2) Persons who pay taxes or are assessed for taxes imposed by any political subdivisions.

(3) Persons in the county participating in any State, county or local program authorized by law and, to the extent such names are available, persons participating in any Federal program authorized by law.

(4) Persons who are on school census lists.

(5) Any other person whose name does not appear in the master list of prospective jurors and who meets the qualifications for jurors set forth in this chapter and who makes application to the commission to be listed on the master list of prospective jurors.

2. 42 Pa.C.S. § 4521(c) provides:

(c) Selection of names for jury service.—At least once each year the commission shall select at random from the master list of prospective jurors the number of names designated by the president judge pursuant to court orders issued under section 4531 (relating to issuance of court orders for jurors).

3. § 4501. Declaration of policy

It is the policy of this Commonwealth that:

The jury commission failed to maintain current, accurate, and adequate lists of qualified and disqualified jurors and to publish or post the list of names of people to serve as jurors.[4] Appellant argues that these defects produced a trial jury not selected at random from a representative cross-section of the eligible population of the county, as required by 42 Pa.C.S. § 4501(1).

The Commonwealth responds that appellant has failed to satisfy the test for ineffectiveness since there is no merit to the underlying claim and because there was no prejudice as a result of the technical violations of the jury selection statutes.

(1) All persons entitled to a jury trial in a civil action or criminal proceeding shall have the right to jurors selected at random from a representative cross section of the eligible population of the county.

(2) All qualified citizens shall have the opportunity to be considered for service as jurors in the courts of this Commonwealth and shall have an obligation to serve as jurors when summoned for that purpose.

(3) A citizen shall not be excluded from service as a juror on the basis of race, color, religion, sex, national origin or economic status.

§ 4502. Qualifications of jurors

Every citizen of this Commonwealth who is of the required minimum age for voting for State or local officials and who resides in the county shall be qualified to serve as a juror therein unless such citizen:

(1) is unable to read, write, speak and understand the English language;

(2) is incapable, by reason of mental or physical infirmity, to render efficient jury service; or

(3) has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor.

4. 42 Pa.C.S. §§ 4522 and 4523 provide:

§ 4522. List of qualified jurors

After receipt of the juror qualification forms as provided in section 4521(d) (relating to selection of prospective jurors), the jury selection commission shall determine whether or not those individuals returning the forms are qualified for jury service, as provided in section 4502 (relating to qualifications of jurors). The names of qualified persons compiled as set forth in this section shall constitute the list of persons who are qualified to serve as jurors and shall be open for public inspection.

§ 4523. List of disqualified jurors

The jury selection commission shall create and maintain a list of names of all prospective jurors who have been disqualified and the reasons for their disqualification. The list shall be open for public inspection.

The argument is that failure to comply fully with the statutory procedure did not substantially impair appellant's constitutional right to jury trial and that the statutory defects in selection of the jury array in no way denied appellant a fair trial.

■ The constitution of this commonwealth guarantees: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Pa. Const. Art. I, § 6. This court has interpreted the inviolability of the right to mean "freedom from substantial impairment. It does not import rigidity of regulation in the manner of impanelling a jury. The cardinal principle is that the *essential features* of trial by jury as known at the common law shall be preserved." *Commonwealth v. Eckhart,* 430 Pa. 311, 314–15, 242 A.2d 271, 273 (1968), citing *Commonwealth v. Fugmann,* 330 Pa. 4, 28, 198 A. 99, 111 (1938) (emphasis in original). The legislature likewise has recognized that a technical violation of the statutes regulating the summoning of jurors does not entitle a defendant to a new trial:

### § 4527. Effect of verdict on jury selection errors

Except as otherwise prescribed by general rule, errors and omissions in the selection of jurors under this subchapter shall not constitute grounds to set aside any jury verdict in any civil or criminal matter or to arrest, reverse, open or strike any judgment entered on a jury verdict, and the trial by jury and its rendition of a verdict in any matter shall constitute a waiver of all such errors and omissions.

42 Pa.C.S. § 4527. Appellant has not shown that he was deprived of a fair trial or that the jury which sat in judgment on his case was anything other than fair and unbiased. Although the evidence presented by appellant at the hearing on post-trial motions established that Delaware County had not updated its master list of prospective jurors for more than three years and had not published or presented for public inspection a list of prospective jurors, he failed to prove that those violations resulted in the improper exclusion of any cognizable group from the jury panel. Therefore, appellant

has not shown that his underlying claim has merit, and thus this court cannot hold that trial counsel were ineffective.

Appellant's second claim is closely related to the first: he argues that he was denied a fair trial through jury venire summoning procedures which systematically produced panels of prospective jurors on which African–Americans, the group of adults aged eighteen to twenty-one, and economically disadvantaged people were underrepresented. He argues that state public assistance records and school census data should have been used to select the array of prospective jurors, in addition to the voter registration lists and lists of licensed drivers. He bases this argument on an informal survey conducted by employees of the Delaware County Public Defender which concluded that only 6.25% of people reporting for jury service were black, whereas United States census data indicate that 10.2% of adults in Delaware County are black. Appellant presented Dr. John Lamberth as an expert in: "jury selection in terms of the process in the county which results in an expected or systematic underrepresentation of African–Americans, statistical analysis as it relates to jury selection, representation and underrepresentation of groups within the selection process, including racial minorities, and attitudes toward the Death Penalty along racial lines." Based in part on the public defender's survey, Dr. Lamberth testified that the jurysummoning procedures used in Delaware County result in significant underrepresentation of blacks and that between blacks and whites there is a statistically significant difference in attitudes toward the death penalty. In addition, this argument identifies eighteen- to twenty-one-year-old adults and economically disadvantaged people as cognizable groups whose systematic exclusion resulted in a jury array not fairly representative of the community.

The court rejected the testimony of appellant's expert for a variety of reasons. One was that the public defender's survey relied upon by the expert to form his opinions was executed by different people, using different methods, on a haphazard basis, with many unexplained omissions, over a short period of time, as a result of which the court concluded that it was

"flawed and unreliable," entitled to "little, if any, credibility or weight." Slip op., December 29, 1995, at 39. Another reason was that the expert relied on statistics from other jurisdictions which had no bearing on the jury array in Delaware County. Another flaw was the expert's reliance on U.S. census data which were ambiguous and without foundation as to the facts at issue—whether or not African–Americans were underrepresented in the Delaware County jury array. In addition to relying on inaccurate and irrelevant statistics, Dr. Lamberth stated some conclusions which were totally unsupported by any facts in the record. *Id.* at 23. The court presented a lengthy, thorough, and logically impeccable analysis of these factors before deciding that the expert's conclusions were entitled to little weight.

The court held, similarly, that appellant failed to present any evidence that eighteen- to twenty-one-year-olds form a distinctive group within the meaning of *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). *Id.* at 17. Moreover, Dr. Lamberth's testimony regarding overrepresentation of blacks in the lower socioeconomic strata was so vague as to provide no evidentiary basis upon which the court "could even consider classifying this as a cognizable group." *Id.* at 19.

It is well settled that "a criminal defendant may not attack the racial composition of jury panels drawn from voter registration lists on the theory that blacks are underrepresented in voter lists." *Commonwealth v. Henry,* 524 Pa. 135, 144–45, 569 A.2d 929, 933 (1990) (citations omitted). In *Commonwealth v. Jones,* 465 Pa. 473, 350 A.2d 862 (1976), this court upheld Delaware County's method of using voter registration lists to create its jury array. Since that time, the county's jury pool has been made more inclusive by adding to the pool lists of those holding driver's licenses, as permitted by 42 Pa.C.S. § 4521. The United States Supreme Court likewise requires a showing of actual discriminatory practice to prevail on this issue. "Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not

*systematically* exclude distinctive groups in the community and thereby fail to be *reasonably* representative thereof." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690, 703 (1975) (citations omitted; emphasis added).

In order to establish a prima facie violation of the requirement that the jury array fairly represent the community, a defendant must show that: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 586–87. "Systematic" means caused by or inherent in the system by which juries were selected. *Id.* at 366–67, 99 S.Ct. at 669–70, 58 L.Ed.2d at 588.

Using these standards, appellant has failed to show that the representation of blacks in Delaware county jury arrays is not fair and reasonable and has failed to show that underrepresentation of blacks in the jury array is due to systematic exclusion of the group. The evidence presented in support, the public defender's informal survey, was so inherently flawed that the trial court properly accorded it little or no weight; the expert's reliance on it and other unreliable and impermissible data support the court's refusal to accept the expert's conclusions. With respect to the eighteen- to twenty-one-year-old group and the economically disadvantaged, appellant failed to show that they are distinctive groups in the community, let alone that they are underrepresented due to systematic exclusion. Because the jury array was summoned in a manner consistently held by this court to be fair and constitutional, and because appellant has failed to prove any discriminatory practices, he was not denied his right to a fair and impartial jury, and he is not entitled to a new trial.

Appellant's final argument is that he was denied the right to and benefit of individual voir dire of prospective jurors. Under Pa.R.Crim.P. 1106(E), he was entitled to individual voir

dire. He cites *Commonwealth v. DeHart,* 512 Pa. 235, 246, 516 A.2d 656, 662 (1986), *cert. denied sub nom. DeHart v. Pennsylvania,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987), as setting forth the standard for satisfaction of the right. Although the court conducted group questioning as to certain preliminary matters, then permitted individual questioning on additional topics, as approved in *DeHart,* appellant claims that the court so limited the scope of individual examination that he was effectively denied his right to individual voir dire. He claims, specifically, that he was forbidden to inquire about the jurors' attitudes about racial prejudice and stereotyping, and attitudes regarding domestic violence and violence against police officers. Appellant raises this issue in the context of trial counsel's ineffectiveness, arguing that their failure to object to the procedure was unreasonable and prejudicial.

■ Our review of the record discloses that appellant was afforded individual voir dire, so there is no merit to his underlying claim of ineffective assistance of trial counsel. The voir dire was conducted as follows. The judge collectively asked the jury panel preliminary voir dire questions. Any juror who responded to any of those questions was examined further at sidebar regarding his response. After that preliminary voir dire, each prospective juror was taken separately into a hearing room where the trial judge, defense counsel, and the prosecutor each had the opportunity to ask additional questions. This questioning dealt mainly with the prospective juror's ability to impose the death penalty, but each juror was questioned about other issues as well, particularly if the juror had responded affirmatively to one of the preliminary voir dire questions. This is precisely the method of voir dire which was approved in *DeHart, supra.*

We have stated that:

[T]he purpose of voir dire is to empanel a fair and impartial jury, not to empanel a jury sympathetic to positions or beliefs of either party. The decision on whether or not counsel may propose their own questions of potential jurors

during voir dire is a matter left solely within the discretion of the trial court.

*Commonwealth v. Paolello*, 542 Pa. 47, 70, 665 A.2d 439, 451 (1995). *See also Commonwealth v. Jermyn*, 516 Pa. 460, 488, 533 A.2d 74, 87 (1987); *Commonwealth v. Albrecht*, 510 Pa. 603, 617, 511 A.2d 764, 771 (1986); Pa.R.Crim.P. 1106(D).

No error occurred in appellant's trial. The record reflects that the voir dire was adequate to empanel a fair and impartial jury. One of appellant's trial counsel submitted a list of twentytwo proposed voir dire questions prior to trial. In ruling on the permissibility of those questions, the trial court did not forbid any of them, though some were encompassed in the preliminary questioning by the court. Appellant's proposed questions included interrogation concerning racial prejudice and bias. This questioning was completed by the judge during the preliminary examination. During that examination, counsel were permitted to pursue the subject with additional questions whenever a potential juror made any response to the judge's questions. Subsequently, at the hearing on post-trial motions, both trial counsel testified to their belief that the voir dire was adequate to identify jurors who should be stricken for cause and to give counsel sufficient information to use their peremptory challenges intelligently and effectively.

Since the voir dire was conducted in accordance with the law and was sufficient to allow trial counsel to uncover prejudices and biases and effectively exercise challenges, appellant's underlying claim of error is without merit and counsel cannot be regarded as ineffective.

We have complied with our statutory duty under 42 Pa.C.S. § 9711(h)(3)(iii) to review sentences of death from the standpoint of disproportionality to sentences imposed in similar cases. *Commonwealth v. Zettlemoyer, supra*, 500 Pa. at 63, 454 A.2d at 961. We reviewed the sentence imposed on appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08

(1984). We perceive no excess or disproportionality in the sentence imposed. Further, the record does not provide any basis for belief that the sentence of death was the "product of passion, prejudice or any other arbitrary factor." *See* 42 Pa.C.S. § 9711(h)(3)(i). Also, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S. § 9711(d).[5] *See* 42 Pa.C.S. § 9711(h)(3)(ii). Accordingly, the sentence must be affirmed.

Judgment of sentence affirmed.[6]

NIX, Former C.J., did not participate in the consideration or decision of this case.

5. The jury found that the murder of Marie Bates was aggravated by the factor set forth in § 9711(d)(11): "The defendant has been convicted of another murder ... committed either before or at the time of the offense at issue." The murder of Officer Hawkins was aggravated by the factors in § 9711(d)(1) ("The victim was a ... peace officer ... who was killed in the performance of his duties ....") and § 9711(d)(11), *supra.*

6. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).