J-A14029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH JEROME COLE | : | |
| | : | |
| Appellant | : | No. 157 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 15, 2022
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0002635-2020

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 2, 2024**

Appellant, Kenneth Jerome Cole, appeals from the judgment of sentence imposed on July 15, 2022, as made final by the denial of his post-sentence motion on December 13, 2022. Among other claims, Appellant challenges the sufficiency and weight of the evidence to support his convictions of possession with intent to deliver, possession of a controlled substance and person not to possess firearms. Concluding that Appellant's claims are waived, as well as meritless, we affirm.

On August 20, 2020, several members of the Chester County High Intensity Drug Trafficking Area task force executed a search warrant at the home of Appellant and his wife, Nicole Gantt, located at 24 West Fifth Avenue, Coatesville, Pennsylvania. N.T., Jury Trial, 2/28/22-3/3/22, at 217, 227. Officer Scott Neuhaus assisted in the execution of the warrant as part of the Emergency Response Team. *Id.* at 205. His primary assignment was to enter

and secure the residence. *Id.* at 208. After entering, Officer Neuhaus observed Appellant and Ms. Gantt emerge from the main bedroom dressed in what appeared to be sleep attire.[1] *Id.* at 209. Once everyone in residence was secured, Detective Jonathan Shave began his investigation. *Id.* at 210.

Inside the main bedroom, Detective Shave asked Ms. Gantt which items belonged to Appellant, and she identified all items on the right side of the bed. *Id.* at 233-34. After being questioned, Ms. Gantt was allowed to collect her things and remove her children from the residence. *Id.* at 234.

Detective Shave started his search on the side of the bedroom identified as Appellant's. He recovered two cell phones – an Alcatel phone and a blue Verizon LG phone. *Id.* at 241. He then searched a plastic bag in that area, which contained: (1) a chain leather wallet with Appellant's identification card, $300-$400 in cash and several keys[2]; (2) a pill bottle for alprazolam in the name of Loretta Brown; (3) a pill bottle with a knotted bag of cocaine inside; (4) a pill bottle with three small bags of crack cocaine and three miscellaneous pills; (5) a pill bottle with 71 pills stamped LP-115; (6) a pill bottle with 31 white round pills stamped 230; (7) a pill bottle with 44 blue, round pills stamped M30; (8) a coupon with Appellant's name on it; (9) mail with a return address for Appellant; (10) $616 in cash, banded together with Appellant's

---

[1] There were several children in the residence as well, one of whom was sleeping in the main bedroom with Appellant and Ms. Gantt. *Id.* at 234.

[2] One of the keys on the wallet was labeled "home" and it unlocked the front door of 24 West Fifth Avenue. *Id.* at 261-62.

driver's license, and three Pennsylvania assistance cards; and (11) an empty bag that typically contains smaller plastic bags, known as Apple bags, which are commonly used to package controlled substances. *Id.* at 242-44, 252-53, 258-61, 264-65.

Several pieces of mail addressed to Appellant were found on the right side of the bed. *Id.* at 266. Detective Shave searched another plastic bag which contained: (1) several Apple bags in various colors; (2) a knotted plastic bag of methamphetamine; (3) a pill bottle for oxycodone in the name of Harry Sellers; and (4) a Ziploc bag with miscellaneous loose bags and small rubber bands. *Id.* at 268-70, 273.

While continuing to search Appellant's side of the bedroom, Detective Shave found a cloth Gucci bag which contained: (1) a key fob for a Lincoln; (2) four bundles of $1,000, a total of $4,000 in cash; (3) a Ruger 9mm firearm with an Apple bag stuck in the slide; (4) a pill bottle with a knotted plastic bag of cocaine; (5) rubber bands; and (6) miscellaneous pills. *Id.* at 276-77.

In the wicker nightstand on Appellant's side, Detective Shave recovered marijuana, a digital scale, rolling papers, and Appellant's checkbook. *Id.* at 298. Detective Shave also recovered a red drawstring bag that contained more Apple bags, a pill bottle with 40 white bars, rubber bands, and a coupon in Appellant's name. *Id.* at 303-05. Another set of keys was recovered from a rack next to the front door with a lanyard with a tribute to Dowoun Phillips (Appellant's mother), and a key that opened the front door of 24 West Fifth Avenue. *Id.* at 309-11. Inside of a kitchen cabinet, officers recovered two

digital scales and stainless-steel cooking utensils, all of which had a white powdery residue on their surfaces. *Id.* at 313-14.

During the search of 24 West Fifth Avenue, Detective Shave obtained information to support a search of 214 Andrew Road, Coatesville, Pennsylvania, a residence owned by Appellant's stepfather, Roland Phillips. *Id.* at 320-21, 424. Detective Thomas Hyland assisted in the execution of the search warrant at that home. *Id.* at 422-23. Mr. Phillips informed Detective Hyland that Appellant kept items in a locked room in his home, but he did not have a key. *Id.* at 425. Detective Hyland had a set of keys from the search of 24 West Fifth Avenue on his person, and one of those keys unlocked the room.[3] *Id.* at 425-26. After opening the room and ensuring that no one was inside, Detective Hyland closed and locked the room until he obtained a search warrant for the locked room. *Id.* at 426-27.

In executing the search warrant of the room identified as Appellant's, Detective Hyland recovered two Sentry safes, a .22 caliber handgun and a black and pink revolver from the closet. *Id.* at 431, 436. In searching the rest of the room, officers found: (1) a pill bottle with 52 white pills; (2) kitchen instruments with white residue on them; (3) a digital scale and clear lid with white residue; (4) a box of sandwich bags; (5) assistance cards for Appellant and Chekesha Pate; (6) mail addressed to Appellant; (7) a plate with a razor

---

[3] Detective Hyland was in possession of the keys because he drove Appellant's Lincoln SVU from 24 West Fifth Avenue to the Chester County training center to secure the vehicle in a garage. *Id.* at 426.

- 4 -

blade and suspected cocaine; (8) a cup with Apple bags and rubber bands; (9) a kitchen pot; (10) a clear jar with suspected marijuana; (11) a bag containing multiple Apple bags; (12) a measuring cup; (13) a plastic container with white, clumpy powder (later determined not to be a controlled substance); (14) two cell phones; (15) $183 in cash; (16) a pill bottle with over a dozen pills inside it; and (17) various types of ammunition. *Id.* at 432-46, 455.

The two safes found in the closet were transported to the Chester County training facility and manually opened. *Id.* at 457. One of them contained $48,950.00 in cash.[4] *Id.* at 479. All the suspected controlled substances seized pursuant to the warrants were sent to a lab for testing. *Id.* at 482. The parties stipulated to the lab results. *Id.* at 484. Several of the pills were identified as controlled substances: 31 oxycodone and acetaminophen, 71 hydrocodone, 62 alprazolam, 27 amphetamine, 44 oxycodone, and 1 cocaine and clonazolam [sic]. *Id.* at 484-89. There were also several pills that were not controlled substances: 23 sildenafil (commonly known as Viagra), 51 gabapentin, naproxen and acetaminophen. *Id.* Additionally, 8.47 grams of cocaine, 1.89 grams of methamphetamine and 23.61 grams of marijuana were seized. *Id.*

_____

[4] The second safe contained sports cards in plastic, rolls of unidentified coin, and various pieces of jewelry. *Id.* at 510-11.

Based on the items recovered from the two residences, Detective Shave opined that large quantities of drugs were being distributed from them.[5] *Id.* at 507. Specifically,

> This is street level sales which generates a large amount of currency. You can see that there's, you know, $60,000 was seized in this investigation. There's cocaine sales. There's prescription pills sales. There's noncontrolled substances sales. This is – this is drug dealing.
>
> The tools are all right there. You've got firearms to protect your assets. You know, there's instruments to weigh, package. We've seen . . . instruments for taking a large amount of cocaine, cooking cocaine, breaking it off into smaller portions, bagging it up into the small Apple bags, and then . . . the sale of those small bags, those small red bags filled with cocaine, that generates money. That generates a lot of money.
>
> Again, the pills are the same thing. The pills are possessed for sale. There's a lot of pills. There's opiates, there's benzos, there's the amphetamines, those are all pills that one person shouldn't have. There's no label, so you can't tell where they have come from, but they're **all possessed with the intent to distribute** them for street sales.

*Id.* Moreover, Detective Joseph Nangle, who was accepted as an expert in investigating controlled substances and controlled substance trafficking, opined that Appellant possessed controlled substances with the intent to deliver and distribute them. *Id.* at 588, 594. He explained:

> Based upon the quantities and the variety of drugs that [Appellant] possessed showed me that he was distributing these drugs. A person . . . doesn't usually possess multiple drugs. The way they're packaged, they were in pill bottles with no sticker on them. They were categorized with each type of drug.

_____

[5] Detective Shave was accepted as an expert in the field of narcotics investigations. *Id.* at 223.

> They were kept together in a location with the firearm accessible to them. They were packaged – some of them were packaged in bags, and then there was also the bags that were new bags, which obviously somebody that was a user wouldn't have new bags in their possession. Those bags were there for other drugs to be put into them for [Appellant] to sell. The cell phones were another indication.
>
> * * * *
>
> . . . [P]eople that are distributing drugs also possess firearms for protection. I also mentioned that they are also used by people that were to – people that steal drugs or come across drugs and will trade them for drugs when they don't have the currency to do so.

*Id.* at 594-95. He further opined that the cash found in the homes was "packaged in rubber bands and . . . in a safe," suggesting that the money "was drug proceeds." *Id.* at 595. The kitchen instruments covered with white residue "indicated that [Appellant] was cooking crack cocaine to sell." *Id.* at 596. Lastly, the fact that the evidence was obtained from two residences indicated that Appellant utilized one as a "stash house" – a location "other than where he resided in order to keep things safe in his opinion." *Id.* at 596.

As a result, Appellant was charged with four counts of possession with intent to deliver ("PWID"), four counts of possession of a controlled substance by a person not registered, three counts of use/possession of drug paraphernalia, three counts of person not to possess firearms, criminal conspiracy, dealing in proceeds of unlawful activities, and possession of marijuana. Prior to trial, the Commonwealth withdrew the three counts of use/possession of drug paraphernalia, criminal conspiracy, dealing in proceeds of unlawful activities, and possession of marijuana.

A jury found Appellant guilty of the remaining counts – four counts PWID, four counts of intentional possession of a controlled substance by a person not registered and three counts of person not to possess firearms.[6] On July 15, 2022, Appellant was sentenced to an aggregate term of 210 to 420 months of incarceration. On July 21, 2022, Appellant filed a timely post-sentence motion. On July 27, 2022, the trial court ordered the parties to brief the motion within thirty days. Thereafter, the trial court granted Appellant's request for a sixty-day extension of the briefing deadline, and a thirty-day extension of time under Rule of Criminal Procedure 720(B)(3)(b) for the trial court to decide the motion before it was denied by operation of law.[7]

The trial court denied Appellant's post-sentence motion on December 13, 2022.[8] This appeal followed.[9] Both the trial court and Appellant have

_____

[6] The three counts of person not to possess firearms were bifurcated. The jury first heard and decided evidence on the other eight counts, and then a second trial was held on the firearms offenses.

[7] Generally, the trial court has 120 days to rule on a post sentence motion. Pa.R.Crim.P. 720(B)(3)(a). However, the trial court "may grant one 30-day extension for decision on the motion" upon good cause. Pa.R.Crim.P. 720(B)(3)(b).

[8] The order also granted Appellant's request to reconsider his sentence regarding restitution and scheduled a restitution hearing for January 5, 2023.

[9] On March 30, 2023, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory. Appellant responded by stating that the restitution component was "an ancillary and collateral issue that does not go to the issues being appealed." Response to Rule to Show Cause, 4/10/23. Thereafter, the Rule was discharged, and the issue was referred to the merits panel.

complied with Pa.R.A.P. 1925. Appellant raises the following issues for our review:

> I. Whether the trial court erred in denying Appellant's *habeas corpus* motion based on the Commonwealth's failure to establish a *prima facie* case?
>
> II. Whether the trial court erred in denying Appellant's motion to suppress and renewed motion to suppress based upon the lack of a basis to search Appellant's property?
>
> III. Whether the trial court's denial of Appellant's motion to compel disclosure of identities of confidential informant and unwitting informant violated Appellant's right to a meaningful opportunity to present a complete defense.
>
> IV. Whether the trial court erred in denying Appellant's fair cross-section challenge to jury selection?
>
> V. Whether the trial court erred in denying Appellant's **Batson** challenge immediately following jury selection?
>
> VI. Whether the evidence was legally insufficient to support the jury's verdict?
>
> VII. Whether the jury's verdict was against the weight of the evidence, warranting a new trial?
>
> VIII. Whether this case should be remanded for further argument as to the validity of Appellant's convictions under 18 [Pa.C.S.A.] § 6105 pursuant to the **Bruen** lines of cases?

Appellant's Brief at 9-10.

I. PRELIMINARY HEARING

First, Appellant argues that the Commonwealth did not establish a *prima facie* case at the preliminary hearing, and that the trial court erred in finding otherwise. "It is well-known that any defect in the preliminary hearing is cured

by subsequent trial. Once a defendant has gone to trial and has been found guilty of the crime or crimes charged, however, any defect in the preliminary hearing is rendered immaterial." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 996 (Pa. Super. 2015) (citation and quotation marks omitted), *appeal denied*, 138 A.3d 4 (Pa. 2016). Therefore, this issue is moot.

## II.    SUPPRESSION

Second, Appellant challenges the denial of his motion to suppress. We find this issue waived, as Appellant has failed to provide a full and complete record, namely the transcript of the suppression hearing. "The fundamental tool for appellate review is the official record of what happened at trial, and appellate courts are limited to considering only those facts that have been duly certified in the record on appeal." ***Commonwealth v. Williams***, 715 A.2d 1101, 1103 (Pa. 1998). "To ensure that the appellate courts have all necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of certified records from trial courts to appellate courts." ***Id.***

Rule 1911 of the Pennsylvania Rules of Appellate Procedure requires appellants to order any transcripts necessary to complete the record for their appeal(s), and provides as follows:

> (a) **General Rule**. The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 4001 *et seq.* of the Pennsylvania Rules of Judicial Administration
>
> * * * *
>
> (d) **Effect of failure to comply**. If the appellant fails to take the action required by these rules and the Pennsylvania

- 10 -

> Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.

Pa.R.A.P. 1911. Thus, "[w]hen the appellant . . . fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007).

When examining the ruling of a motion to suppress, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted). Here, there is no indication on the docket that a request for the transcript of the suppression hearing was ever filed. Without the benefit of the suppression hearing transcript, this Court cannot conduct a meaningful review of the issue. Therefore, we find Appellant's second issue waived.[10]

## III.   DISCLOSURE OF CONFIDENTIAL INFORMANT

In Appellant's third issue, he challenges the denial of his motion to compel disclosure of the identities of a confidential informant and an unwitting informant. Initially, Appellant was charged with offenses related to controlled buys purportedly between Appellant and the confidential informant and the

---

[10] The trial court determined Appellant's suppression issue was waived for the same reason. *See* Trial Court Opinion, 3/17/23, at 4-5.

- 11 -

unwitting informant. *See* Trial Court Opinion, 3/17/23, at 8. However, the Commonwealth withdrew all charges related to the controlled buys and "no longer intend[ed] to introduce any evidence of the circumstances and details of the controlled buys at trial. The Commonwealth planned to only proceed on the counts pertaining to what was discovered based on the execution of the search warrants." *Id.*

When faced with a claim that a trial court erred in its disposition of a request for disclosure of an informant's identity, our standard of review is an abuse of discretion. *Commonwealth v. Withrow*, 932 A.2d 138, 140 (Pa. Super. 2007). "Indeed, where the informant was an eyewitness to the transaction in question, the role of the trial judge's discretion is established by rule of court. *See* Pa.R.Crim.P. 573(B)(2)(a)(i). Where the informant was not an eyewitness, the extent of the court's discretion is specified more broadly by case law." *Id.*

"Significantly, regardless of whether the informant was an eyewitness to the transaction for which the defendant was charged, the Commonwealth retains a qualified privilege not to disclose an informant's identity." *Id.* at 140-41. "To overcome that privilege, the defendant must show that his request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense." *Id.* at 141. At a minimum, a defendant must show "a reasonable probability the informant's testimony would exonerate him." *Id.* Once a defendant meets this threshold

requirement, then the trial court must determine whether to reveal the informant's identity. *Id.*

Where the charges are based on evidence discovered during the execution of a search warrant, and not based on a drug transaction, courts have found that the defendant failed to meet the threshold requirement. *See id.*; *see also Commonwealth v. Belenky*, 777 A.2d 483, 489 (Pa. Super. 2001) ("Appellant was charged with the offenses resulting from the search, not the sale, and the validity of that search has nothing to do with the identity of the man who sold drugs"). Moreover, courts have noted that confidential informants are not present at the time a warrant is executed and "could add nothing to the question of identity [at the execution of the warrant], which is the only identity relevant to guilt." *Id.* at 142 (quoting *Belenky*, 777 A.2d at 489).

Here, Appellant admits that the confidential informant was not an eyewitness to any of the controlled buys. Appellant's Brief at 28. However, he claims that the confidential informant's information was based on hearsay statements of the unwitting informant. *Id.* "Those hearsay statements of the [unwitting informant] were then relayed to the [confidential informant], and the [confidential informant] then relayed those statements to police, and that information then formed the basis for the search warrants." *Id.* Appellant contends that since the trial court denied his motion to compel disclosure, he was deprived of the ability to dispute his identity as the person who sold controlled substances to the informant. *Id.* at 28-29.

We note that Appellant challenged the validity of the search warrants in his motion to suppress. As noted above, he has waived appellate review of that issue. Therefore, we are bound by the trial court's determination that the search warrants were validly issued.

Even if the issue were not waived, we would find that it lacks merit. The Commonwealth charged Appellant based on the contraband found during the execution of valid searches, and not based on what any informants told police about the controlled buys. The confidential informant did not observe any of the subject offenses or searches by police. *See Withrow, supra*. Therefore, the trial court properly denied Appellant's motion to compel disclosure and no relief is due.

IV.   CROSS-SECTION CHALLENGE TO JURY SELECTION

Appellant's fourth issue is that the trial court erred in denying his fair cross-section challenge to jury selection. Our Supreme Court has summarized the requirements for this challenge as follows:

> The Commonwealth notes that Appellant does not have the right to demand that specific numbers of minorities sit on the jury panel which judges him. *See Commonwealth v. Jones*, 304 A.2d 684 ([Pa.] 1973); *Commonwealth v. Craver*, 688 A.2d 691, 696 ([Pa.] 1997) ("Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not *systematically* exclude distinctive groups in the community and thereby fail to be *reasonably* representative thereof." (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (emphasis in the original))).

To establish a *prima facie* violation of the requirement that a jury array fairly represent the community, [an appellant] must show that:

> (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic" means caused by or inherent in the system by which juries were selected.

*Craver*, 688 A.2d at 696 (citing *Duren v. Missouri*, 439 U.S. 357, 364, 366-67 (1979)). **Proof is required of an actual discriminatory practice in the jury selection process**, not merely under-representation of one particular group. *See id.* [at 696]. The defendant bears the initial burden of presenting *prima facie* evidence of discrimination in the jury selection process. *See Jones*, 304 A.2d at 692.

*Commonwealth v. Johnson*, 838 A.2d 663, 682 (Pa. 2003) (emphasis added).

At the end of jury selection in this case, counsel for Appellant made the following objection at sidebar: "for the sake of preserving the record for appeal, PCRA, or whatever, I would have to raise the following challenges. I'll raise a cross-section challenge based on the Sixth Amendment." N.T., Trial, at 118. The trial court denied the motion and found that Appellant "offered absolutely no statistical proof regarding "racial minorities" being unfairly represented in Chester County's jury pool in relation to the number of such persons in the community." Trial Court Opinion, 3/17/23, at 12. We agree.

Appellant failed to present any evidence of a calculated discriminatory practice on the part of the Commonwealth. In fact, he offered no evidence

concerning the Chester County jury selection process at all. Moreover, Appellant failed to make any argument as to what discriminatory practice had caused a systematic exclusion of a distinct group from the jury.

In his brief, Appellant cites data from the U.S. Census Bureau concerning Chester County's population – 8.3% Black, 83.9% White, 7.2% Asian American, and 7.7% Hispanic or Latino – and argues that such statistics satisfy the second prong of the cross-section test because "[t]he only conclusion that is fair to draw is that this is due to systematic exclusion of African Americans and racial minorities." Appellant's Brief at 31-32. We disagree. The mere showing of underrepresentation, absent an actual discriminatory practice in the jury selection process, causes Appellant's constitutional claim to fail.[11] *See Johnson, supra.* Accordingly, no relief is due on this issue.

## V. BATSON CHALLENGE

In Appellant's fifth issue, he raises a *Batson[12]* challenge regarding the Commonwealth's striking of an Asian woman (potential juror 27), who was the "*only* racial minority eligible to sit on the jury." Appellant's Brief at 33 (emphasis in the original). "In *Batson*, the United States Supreme Court held

_____

[11] Appellant's argument that "[d]efense attorneys do not, and should not, be required to, stride into jury selection with census reports, surveys, and bar graphs" is misplaced and a misunderstanding of the law. *See* Appellant's Brief at 32.

[12] *Batson v. Kentucky*, 476 U.S. 79 (1986).

that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." ***Commonwealth v. Murray***, 248 A.3d 557, 567 (Pa. Super. 2021) (citing ***Commonwealth v. Reid***, 99 A.3d 470, 484 (Pa. 2014)). A criminal defendant may object to race-based exclusion of jurors regardless of whether the defendant and the excluded juror share the same race. ***Id.*** A ***Batson*** claim presents mixed questions of law and fact; therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous. ***Id.***

> When a defendant makes a ***Batson*** challenge during jury selection:
>
> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried the burden of proving purposeful discrimination.

***Id.*** at 568 (citation omitted). Additionally, Pennsylvania law requires a defendant to specifically identify: (1) the race or gender of all venirepersons in the jury pools; (2) the race or gender of all venirepersons remaining after challenges for cause; (3) the race or gender of those removed by the prosecutor; and (4) the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense. ***Id.*** (citing ***Commonwealth v. Hill***, 727 A.2d 578, 582 (Pa. Super. 1999)).

- 17 -

This Court previously explained what is required for a defendant to make a *prima facie* showing of purposeful discrimination:

> The *prima facie* case requires more than just noting on the record the race of excluded jurors and the numerical composition of the prosecution's strikes. The *prima facie* case must be detailed enough for the trial court eventually to assess whether there has been purposeful discrimination to establish a **Batson** violation. The *prima facie* case must identify the circumstances a defendant believes establishes purposeful discrimination, including those record items required under Pennsylvania law.

*Id.* A *prima facie* case has been found where, *inter alia,* the defendant was Black, and the prosecutor struck seven Black prospective jurors and no White prospective jurors. **See Commonwealth v. Edwards**, 177 A.3d 963, 972-73.

Here, at the end of jury selection, Appellant raised a **Batson** challenge regarding potential juror 27:

> [27] was the Asian woman. She was the one that was very cautious and careful about bringing everything to our attention. We didn't have any issues with her at sidebar. She was the only racial minority that was able to be selected during the preemptory strike process, and she was stricken.

N.T., Trial, at 119.

We agree with the trial court that Appellant failed to make a *prima facie* showing of purposeful discrimination. Appellant noted for the record that the jury pool consisted of 55 people, only four of whom identified as a minority – two Black, one Asian, and one Hispanic. *Id.* at 118. One Black juror was excused for cause because he was related to a defense witness. *Id.* It was unlikely that the second Black juror and the Hispanic juror would be selected

- 18 -

due to Chester County's jury numbering system. *Id.* at 118-19. That left the Asian juror, who was struck by the Commonwealth. *Id.* at 119.

The entirety of Appellant's argument is based solely on the fact that the Commonwealth struck a potential juror who identified as a minority. But as stated above, mere reference to the striking of a juror of one race is not sufficient to set forth a *prima facie* showing of purposeful discrimination. **See Murray, supra.**

Even if Appellant made a *prima facie* showing of purposeful discrimination, the Commonwealth offered, and the trial court accepted, a race-neutral reason for the disputed strike:

> [T]o be perfectly frank, I wasn't even looking at her when I struck her. But it was based on recollections per [co-counsel] that at sidebar, she did give answers at sidebar, but she definitely seemed to be a little bit all over the place in terms of her answers and in terms of her comprehension of the things that were at issue.

N.T. Trial at 120. We are satisfied that even if Appellant made a *prima facie* showing of purposeful discrimination, the Commonwealth provided a race-neutral reason for striking juror 27. Therefore, the trial court did not abuse its discretion in denying Appellant's **Batson** challenge.

## VI. SUFFICIENCY OF THE EVIDENCE

In Appellant's sixth issue, he challenges the sufficiency of the evidence to support his convictions. Our standard of review is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

- 19 -

enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (internal citations omitted).

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa. Super. 2015). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* When an appellant fails to identify the specific elements of the specific crimes that are being challenged in a 1925(b) statement, the issue is waived. *Id.*; *see also Commonwealth v. Bonnett*, 239 A.3d 1096, 1106-07 (Pa. Super. 2020), *appeal denied*, 250 A.3d 468 (Pa. 2021) (finding waiver due to a blanket statement in the Rule 1925(b) statement that there was

"insufficient evidence to sustain a verdict of guilty of each charge in each case").

Here, Appellant's 1925(b) statement of errors includes the following claims: "The evidence presented at trial was legally insufficient to support the jury's verdict." Appellant's Concise Statement, 1/30/23, at ¶ 7. This boilerplate, conclusory statement was deficient as a matter of law to preserve a sufficiency challenge for appellate review. Appellant was convicted of three different offenses, but he failed to identify the specific element of each offense that he believed was not supported by sufficient evidence. Instead, he simply objected to the sufficiency of "the jury's verdict," an assertion that was no more specific than the sufficiency claims we found waived in **Bonnett.** Accordingly, we hold that Appellant waived his challenge to the sufficiency of the evidence.[13]

VII.   WEIGHT OF THE EVIDENCE

Alternatively, in Appellant's seventh issue, he contends that the verdicts were against the weight of the evidence. He claims that

> [t]he jury's verdict is against the weight of the evidence due to the lack of evidence establishing constructive possession by [Appellant] of the contraband in both houses. There was no fingerprint evidence nor any controlled buys introduced. Nicole Gantt had access to the same areas in the 5th Avenue property. Accordingly, a new trial should be granted.

---

[13] Even if the sufficiency claims were not waived, Appellant would not be entitled to relief for the reasons given by the trial court in its 1925(a) opinion. **See** Trial Court Opinion, 3/17/23, at 93-102.

Appellant's Brief at 37.

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000). On review of a trial court's ruling on a weight of evidence claim, we employ an abuse of discretion standard:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence.

*Id.* at 753.

Although labeled as a weight claim, it is apparent that Appellant is merely repeating his challenge to the sufficiency of the evidence. Appellant argues that the verdict is against the weight of the evidence "due to the lack of evidence establishing constructive possession." Appellant's Brief at 37. But as noted above, a challenge to the weight of the evidence concedes there was sufficient evidence. **See Widmer, supra.**

Regardless, we see no valid basis on which to disturb the trial court's ruling on the weight of the evidence. Appellant does not dispute that the items on the right side of the bed belonged to him. Rather, he argues that Ms. Gantt had equal access to the areas where the contraband was found. Here, the evidence of Appellant's guilt was significant and compelling – most

of the contraband was found with or near an item identifying Appellant, i.e., a piece of mail, identification card, access card, etc.) and a significant amount of contraband, including a safe with almost $50,000 in cash, was found in a locked room inside Appellant's stepfather's home that only Appellant had access to. Thus, Appellant's weight of the evidence claim is without merit, since we find no abuse of discretion by the trial court.[14]

## VIII. FIREARMS CONVICTIONS

Lastly, Appellant requests this Court to remand the matter to the trial court to determine whether his firearms convictions violate the Second Amendment pursuant to **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 597 U.S. 1 (2022). Appellant was convicted of three counts of possession of firearms prohibited, 18 Pa.C.S.A. § 6105. He makes a facial challenge to the constitutionality of Section 6105 and seeks remand to create a record of the issue. **See** Appellant's Brief at 40-41.

The Commonwealth and the trial court argue that Appellant has waived this claim because he did not first raise the claim before the trial court. We agree. **See** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Armolt**, 294 A.3d 364, 379 (Pa. 2023) (in general, constitutional challenges

---

[14] The trial court "unequivocally determine[d] that the guilty verdict on the charges is not against the weight of the evidence. To the contrary, the evidence strongly supports the verdict on each of the counts." Trial Court Opinion, 3/17/23, at 104.

- 23 -

are subject to the ordinary preservation rules); ***Commonwealth v. Strunk***, 953 A.2d 577, 579 (Pa. Super. 2008) ("even issues of constitutional dimension cannot be raised for the first time on appeal"). ***Bruen*** was decided on June 23, 2022, *prior to* Appellant's sentencing and was not raised at the time of sentencing nor in a post-sentence motion; therefore, the claim is waived.

Based on the foregoing, none of Appellant's claims warrant relief, and the judgment of sentence must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/2/2024